## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

R.W., by and through his parent,
M.W., and M.W.,

                **Plaintiff,**

   **v.**

GEORGIA DEPARTMENT OF
EDUCATION, OFFICE OF STATE
ADMINISTRATIVE HEARINGS
FOR THE STATE OF GEORGIA,
SOCIAL CIRCLE CITY SCHOOL
DISTRICT, GEORGIA BOARD OF
EDUCATION, KATHY COX in her
official capacity as Georgia
Superintendent of Schools, LINDA
ZECHMANN, PEGGY NIELSON,
WANDA BARRS, WILLIAM
BRYANT, JOY BERRY, JAMES
BOSTIC, JR., JOSE PEREZ,
MARY MURRAY, PAT
BIGGERSTAFF, JAMES
FRANKLIN, ALBERT HODGE,
CAROL WILLIAMS, and DEAN
ALFORD, in their official capacities
as members of The Georgia Board of
Education,

                **Defendant.**

**1:07-cv-535-WSD**

## <u>OPINION AND ORDER</u>

This matter is before the Court on Defendant Social Circle City School District's ("Defendant" or "SCCSD") Motion for Judgment on the Administrative Record and Motion to Dismiss [26] and Plaintiffs R.W. and M.W.'s (collectively, "Plaintiffs") Motion for Partial Judgment on the Record [28].[1]

## I.   BACKGROUND

Plaintiff R.W. ("R.W.") is a disabled child who resides in Social Circle City, Georgia and attends public schools in the Social Circle City School District. Plaintiff M.W. ("M.W.") is R.W.'s mother.  R.W. is entitled under the Individuals with Disabilities Education Improvement Act, 42 U.S.C. § 1400 et. seq. ("IDEA") to free, appropriate, public education from SCCSD.[2]

---

[1] Plaintiffs have filed a Statement of Facts as to Which There is No Genuine Issue [28] in support of Plaintiffs' Motion for Partial Judgment on the Record, to which Defendant has responded.  Because this is properly a Motion for Judgment on the Record, "the usual F.R. Civ. P. 56 summary judgment principles do not apply in an IDEA case."  <u>Loren F. v. Atlanta Indep. Sch. System</u>, 349 F.3d 1309, 1313 (11th Cir. 2003).  The Statement of Facts is not a pleading that is appropriate in the matter before the Court, and the Court does not consider it or the Defendant's response.

[2] On October 4, 2007, this Court entered an order ("October 4 Order") dismissing all the named defendants except SCCSD.  On October 15, 2007, Plaintiffs filed a motion for reconsideration, requesting that the Court reconsider and vacate the October 4 Order.  On April 4, 2008, the Court denied Plaintiffs'

On July 24, 2006, Plaintiffs filed with the Office of State Administrative Hearings ("OSAH")[3] a due process complaint under the IDEA ("IDEA complaint").  The IDEA complaint asserted twenty-one (21) alleged deficiencies in SCCSD's handling of R.W.'s education.  Plaintiffs alleged that SCCSD refused to evaluate or assist R.W. with issues he experienced with handwriting, speech, language, reading, and mathematical reasoning.  The issues he experienced were not described in the complaint.  Plaintiffs alleged that SCCSD never conducted an IDEA evaluation or functional behavioral assessment of R.W. and that when R.W. was privately evaluated, he was found to have "average" intelligence, even though his math reasoning and spelling skills were found to be below the 2nd percentile for his age.  Plaintiffs also alleged discrimination against R.W. by SCCSD staff, including an unnamed teacher calling R.W. a "donkey" and permitting students to verbally and physically harass him.

_____

Motion for Reconsideration.

[3] The Office of State Administrative Hearings ("OSAH") is an administrative body that maintains administrative law judges ("ALJs") who conduct administrative hearings to determine whether students' rights under the IDEA have been violated.

OSAH assigned R.W.'s case to an ALJ.  After a number of motions by both Plaintiffs and SCCSD,[4] including SCCSD's objection to the sufficiency of the IDEA complaint, the ALJ stayed the case until September 1, 2006 at the request of both parties.[5]  On October 13, 2006, the ALJ entered a Notice of Hearing Order, scheduling a hearing on the IDEA complaint on non-consecutive days in December.

On October 16, 2006, SCCSD moved to dismiss the IDEA complaint.  On November 6, 2006, the ALJ denied the motion, and also denied as untimely SCCSD's initial objection to the sufficiency of the IDEA complaint.  However, the ALJ independently required Plaintiffs to file by November 16, 2006 an amended complaint streamlining the twenty-one issues of the original IDEA complaint.  The ALJ stated the Plaintiffs had not provided factual support for the individually identified issues or a time frame in which the issues alleged by Plaintiffs occurred. Despite listing a factual description of R.W.'s educational history, "Petitioner has not linked any of these facts to the enumerated issues purportedly giving rise to his

---

[4]  Plaintiffs allege that SCCSD's motions were untimely.

[5]  It appears the parties jointly requested a stay of the proceedings to permit certain testing of R.W. to be completed.  See Doc. 27, Exhibit 5.

due process hearing request, leaving the District and the Court in the dark regarding the factual basis for his specific claims."  ALJ Order of Nov. 6, 2006.

On November 17, 2006, Plaintiffs filed an amended IDEA complaint ("amended complaint" or "More Detailed Submission") reducing the twenty-one issues of the original IDEA complaint to four:  i) denial of free appropriate public education ("FAPE"); ii) discrimination in violation of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act, as well as "state and federal statutory and constitutional law"; iii) failure to evaluate; and iv) failure to provide education in the "least restrictive environment."[6]

On December 6, 2006, the ALJ dismissed the amended IDEA complaint, holding that it had been untimely filed and that it failed to provide SCCSD with fair notice of the issues in the case.[7]  Specifically the ALJ held that Plaintiffs'

_____

[6] After the amended IDEA complaint was filed, SCCSD missed a statutory disclosure deadline requiring each party to submit evidence at least five (5) business days prior to the due-process hearing.  Plaintiffs allege, without support, that the ALJ excused SCCSD from the consequences of missing this deadline without requiring SCCSD to justify or explain its failure to file on time.  The record shows the hearing was not even held, and thus the evidentiary submission issue was moot.

[7] Plaintiffs admit that the amended IDEA complaint was filed one day late. Plaintiffs' counsel claims that she attempted to file the pleading by the date required, but that various computer difficulties she experienced while out of town

amended submission contained "a rambling of vague, conclusory facts that have

not been placed in any time frame, do not identify the names of teachers allegedly

involved, and seem generally calculated to confuse the four identified issues.

Furthermore, there does not appear to have been any attempt by Petitioner to

correlate the issues to the broadly stated proposed resolutions since Petitioner

simply resubmitted those from the original complaint."  ALJ Order of Dec. 6,

2006.[8]  The ALJ also found that SCCSD "cannot be expected to resolve the issues

or provide a defense if the issues have not been sufficiently fleshed out."  Id.

On June 9, 2008, SCCSD filed a motion for judgment on the administrative

record as to Counts I and III of Plaintiffs' Complaint and moved to dismiss Count

IV for failure to state a claim because Plaintiffs have failed to exhaust the

---

at a seminar caused her to miss the deadline.  Plaintiffs' counsel's late filing
appears to relate to her attempt to use her hotel's public computer to file the
pleading.

[8] The revised complaint was entitled "Petitioner's More Detailed
Submission", dated November 17, 2006 (the "More Detailed Submission").

administrative remedies available under IDEA.[9]  On July 3, 2008, Plaintiffs filed a

Motion for Partial Judgment on the Record as to Count I.

## II.   STANDARD OF REVIEW

This case involves an appeal of the ALJ's decision to dismiss Plaintiffs' due

process hearing complaint on procedural grounds, specifically Plaintiffs' failure to

meet the sufficiency requirements under 20 U.S.C. § 1415(b)(7)(A) and the ALJ's

order on November 6, 2006 directing Plaintiffs to "clarify and streamline the

issues, associate the facts to the specific enumerated issues, and identify a proposed

resolution as to each issue, to the extent known."

A.   Review of IDEA Administrative Decisions (Counts I and III)

"[T]he administrative decision in an IDEA case is entitled to due weight and

the court must be careful not to substitute its judgment for that of the state

_____

[9] Defendant argues in its brief that only Counts I and IV remain in this litigation after this Court's dismissal of all the claims against the State Defendants. Plaintiffs appear to concede this point, and they do not address this argument in either their response or their Motion for Partial Judgment on the Record.  However, Count III of the Complaint specifically names SCCSD as a Defendant. Notwithstanding Defendant's contention that Count III "does not appear to be any different from the appeal of the decision of the ALJ in Count I", Count III is considered in this Order.  Accordingly, the counts, other than Counts I, III and IV, are deemed to be abandoned.  See McGinnis v. Ingram Equipment Co., Inc., 918 F.2d 1491, 1496 (11th Cir. 1990) ("A party normally waives its right to argue issues not raised in its initial brief.").

educational authorities." <u>Walker County Sch. Dist. v. Bennett</u>, 203 F.3d 1293, 1297 (11th Cir. 2000) (noting this standard of deference was established by the Supreme Court in <u>Bd. of Educ. v. Rowley</u>, 458 U.S. 176 (1982)).  A district court's decision in IDEA cases "is better described as judgment on the record" rather than a decision on summary judgment.  <u>Loren F. v. Atlanta Index. Sch. Sys.</u>, 349 F.3d 1309, 1313 (11th Cir. 2003).  The Court may engage in "factfinding under F.R. Civ. P. 52 in IDEA cases–even on a record bearing evidence tendered in addition to the IDEA administrative record–subject to the requirement that they accord 'due weight' to administrative findings.'" <u>Id.</u> at 1314.  "To that end, administrative fact findings are considered to be prima facie correct, and if a reviewing court fails to adhere to them, it is obliged to explain why."  <u>Id.</u> at 1314 n. 5 (internal quotations and citations omitted).

      B.    <u>Motion to Dismiss</u> (Count IV)

Federal Rule of Civil Procedure 12(b)(6) permits dismissal where the plaintiff has failed to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Dismissal of a complaint under Federal Rule 12(b)(6) is appropriate "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action."  <u>Marshall County Bd. of Educ. v.</u>

-8-

<u>Marshall County Gas Dist.</u>, 992 F.2d 1171, 1174 (11th Cir. 1993).  In considering a defendant's motion to dismiss, the court accepts the plaintiff's allegations as true, <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984), and considers the allegations in the complaint in the light most favorable to the plaintiff.  <u>Watts v. Fla. Int'l Univ.</u>, 495 F.3d 1289, 1295 (11th Cir. 2007).  Ultimately, the complaint is required to contain "enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atl. Co. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007).  A formal recitation of the elements of a cause of action is not sufficient without adequate factual allegations stating a plausible claim for relief.  <u>Watts</u>, 495 F.3d at 1295.  "To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims."  <u>Jackson v. BellSouth Telecomms.</u>, 372 F.3d 1250, 1263 (11th Cir. 2004) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.") (citations omitted).

**III.   DISCUSSION**

    A.    <u>Count I: Decision of the ALJ & Count III: Denial of Right to IDEA Fair Hearing</u>

The goal of IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education . . . designed to meet their unique needs and prepare them for employment and independent living."  20 U.S.C. § 1400(d)(1)(A).  IDEA provides federal funding to assist state and local agencies in the education of children with disabilities.  It conditions federal funding on a state's compliance with federally mandated goals and procedures.  If a parent believes that state or local agencies are not properly implementing IDEA, the statute allows a parent to file a complaint and provides for a hearing conducted on a sufficiently specific grievance.  20 U.S.C. § 1415(f)(1).  IDEA further provides that "[a]ny party aggrieved by the findings and decision made under subsection (f) [which provides for impartial due process hearings] or (k) [which provides for placement of a disabled child in an alternative education setting] of this section . . . shall have the right to bring a civil action with respect to the complaint presented pursuant to this section . . . ." <u>Id.</u> at § 1415(i)(2).

"[A]ny student who wants 'relief that is available under' the IDEA must use the IDEA's administrative system, even if he invokes a different statute." M.T.V. v. Dekalb County Sch. Dist., 446 F.3d 1153, 1158 (11th Cir. 2006). "[T]he *N.B.* holding prohibits district courts from entertaining any matters not fully explored through the IDEA's administrative procedures." W.L.G. v. Houston County Bd. of Educ., 975 F.Supp. 1317, 1327 (M.D.Ala. 1997) (discussing N.B. by D.G. v. Alachua County Sch. Bd., 84 F.3d 1376 (11th Cir. 1996)). That is, IDEA contemplates a process which begins, and hopefully is resolved in, a collaborative effort in which a child, his parents or guardians, and the school system work to identify the disability at issue, the manifestation of it in a student's academic performance, and the exploration and implementation of appropriate remedial and accommodating responses to address the specific disability and its impact on a child's performance.

Both the IDEA statute and case law contemplate district court review *after* a hearing on the merits has been conducted by ALJ. In 2004, Congress amended the IDEA to add "[a] requirement that a party may not have a due process hearing until the party, or the attorney representing the party, files a notice that meets the requirements of subparagraph (A)(ii)." 20 U.S.C. § 1415(b)(7)(B). This new

provision specifically overruled a previous U.S. Department of Education regulation stating that the parent's right to a due process hearing could not be denied or delayed for failure to provide adequate information in the complaint notice.  See 34 C.F.R. § 300.507(c)(4) (2005).  See also Westerville City Sch. Dist., Ohio SEA, 107 LRP 11274, at *3 (May 1, 2006); 34 C.F.R. § 300.508(c).

A proper complaint notice requires the name, address, and school of the child (as well as other requirements) and must also include "a description of the nature of the problem of the child relating to such proposed initiation or change, *including facts relating to such problem*; and [] a proposed resolution of the problem to the extent known and available to the party at the time."  20 U.S.C. § 1415(b)(7)(A)(ii) (emphasis added).  That is, Congress recognized that for the administrative process to work properly, it had to begin with a complaint that specified the disability and its manifestations, which then allow for the parties to explore and implement appropriate resolutions.

This is an appeal of the ALJ's decision to dismiss the complaint on the grounds that Plaintiffs have failed to meet the fundamental requirement of a

proper–that is, specific–complaint notice.[10]  In this matter, the ALJ ultimately concluded, after affording Plaintiffs two opportunities to meet the proper complaint notice requirements of the IDEA, that Plaintiffs had failed to articulate a disability or its academic impact and thus did not meet the notice requirement of the statute. The ALJ concluded that Plaintiffs' complaint failed to meet the requirements of Section 1415(b)(7)(A)(ii).

It is within the ALJ's discretion to require a party to file a complaint that meets the statutory notice requirements before conducting a due process hearing. The reasons for this are clear, and are stated in the ALJ's order and in other case law.  Without a clear description of the problem, the specific facts relating to each problem, and detailed resolutions for each problem, a school district "cannot be expected to resolve the issues or provide a defense if the issues have not been sufficiently fleshed out."  Dec. 6, 2006 Order by ALJ.  As explained by the Supreme Court: "IDEA hearings are deliberately informal and *intended to give ALJs the flexibility that they need to ensure that each side can fairly present evidence.*  IDEA, in fact, requires state authorities to organize hearings in a way

_____

[10]  It is undisputed that a hearing was not conducted on the matters raised in the complaint notice.  The Court does not review Plaintiffs' complaint to determine whether R.W. was denied FAPE.

that guarantees parents and children the procedural protections of the Act."
Schaffer v. Weast, 546 U.S. 49, 61 (2005) (emphasis added).

The requirement that a proper complaint be filed before a hearing is conducted, which was enacted in 2004, "was designed to protect a school district from defending due process requests indicating only that 'child was denied a FAPE.'" Westerville, 107 LRP 11274, at *4 (citing the legislative history of the IDEA amendments). Congress recognized that "'[T]here should be no hearing or appeal in regard to the hearing officer's [sufficiency] determination.'" Id. at *4-5.[11] The dismissal without prejudice is not a final decision by the ALJ of the merits of Plaintiffs' case. No due process hearing has been held, and the merits of Plaintiffs' case have yet to be determined. As the IDEA makes clear, an ALJ can

---

[11] Plaintiffs seek to sidestep the requirements of Westerville by claiming their complaint is "sufficient as a matter of law and insufficiency was not the cause of dismissal but alleged failure to comply with an untimely order was." Plaintiffs' Brief in Support of Motion for Partial Judgment on the Record ("Plaintiffs' Brief") at 7. The administrative record and the ALJ's order of dismissal discredit Plaintiffs' claim. In dismissing Plaintiffs' amended submission, the ALJ stated, "I find that Petitioner has failed to comply with the Court's order in that 'Petitioner's More Detailed Submission' was untimely filed *and failed to substantively address the concerns of the Court to provide fair notice to Respondent.*" ALJ Order of Dec. 6, 2006 (emphasis added). Notwithstanding Plaintiffs' unsubstantiated claims of preferential treatment in favor of Defendant, Plaintiffs' More Detailed Submission was dismissed independently for failing to provide fair and sufficient notice to Defendant.

require a party to file a notice that meets the requirements of Section

1415(b)(7)(A)(ii) before a due process hearing must be held.

The ALJ's order on November 6, 2006, requiring Plaintiffs to submit an

amended, streamlined complaint, was designed to require Plaintiffs to provide

focused, specific grounds in which Plaintiffs described R.W.'s specific, academic-

affecting disability or disabilities and proposed resolutions.  The ALJ's decision to

impose this requirement in the November 6, 2006 Order was essential considering

Plaintiffs' initial pleading strategy to file a shotgun complaint containing twenty-

one (21) unspecified allegations unsupported by specific facts.  From it, it was

impossible to determine R.W.'s specific problems, how they were evidenced, how

the district's response was inadequate, and which proposed resolution responded to

which claimed disability and its alleged academic impact.

Plaintiffs' response to the ALJ's November 6, 2006 Order was to take their

twenty-one complaints and reduce them to four, which were even more general

complaints unsupported by even a modicum of articulated factual detail to show

the connection between the disabilities – whatever they are – and the impact on

R.W.'s academic performance – whatever that might be.  The amended complaint,

when carefully reviewed, does not leave the reader, and does not leave this Court,

-15-

with enough information to discuss R.W.'s disabilities, the impact of them, or how they might be addressed.  Confronted with the Amended Complaint, on December 6, 2006, the ALJ determined that Plaintiffs' amended submission did not meet the notice requirements under the statute and did not comply with his order requiring focus and specificity.

The ALJ is the hearing officer who will preside over the due process hearing and who is charged with determining if a child was denied FAPE.  He is the individual in the best position to determine whether the complaint satisfactorily meets the notice requirements under the statute, to insure the administrative process in the first instance, and to promote dialogue and resolution-seeking between the parties.  Without proper notice, the school district cannot know specifically what problems to address or what resolutions to offer.  An unspecific complaint also does not allow the ALJ to review the administrative process or to determine a proper remedy.  The decision by the ALJ simply was to require a proper, sufficient complaint before allowing the process to proceed.  The Court is

required to give the ALJ's decisions great weight and in this case, the decision appears to this Court to be the proper one.[12] [13]

Even if the Court independently reviewed the Plaintiffs' amended complaint, it necessarily would determine the amended complaint does not meet the IDEA notice requirements. Plaintiffs' amended submission does not address the ALJ's concerns, and it does not meet the notice requirements required in the statute. Plaintiffs' vague, conclusory statements are not supported by the alleged "facts." There simply is no factual context or time frame which describes the disabilities alleged and their alleged impact on R.W.'s academic performance. The assertions in the amended submission certainly do not provide fact context within which to identify and to address the issues about which Plaintiffs claim they are concerned.

_____

[12] It is likely, though unclear, that Plaintiffs' failure to file a sufficient complaint and proceed to the merits of a due process hearing constitutes a failure to exhaust administrative remedies. Defendant does not raise this issue directly, only doing so with respect to Plaintiffs' ADA and Section 504 claims. Because Defendant did not raise this defense with respect to Plaintiffs' claims under the IDEA, the Court does address it here.

[13] The Court's statement in its October 4 Order that Plaintiffs "plainly have standing to bring a civil action to appeal the ALJ's dismissal of the IDEA complaint" does not change the Court's conclusion. The Court did not have the administrative record at the time of the order, and review of the record makes it clear that the ALJ's dismissal was in accordance with the IDEA notice requirements.

-17-

The amended complaint does not even identify the names of any teachers allegedly involved.

An objective critical review of the amended complaint discloses that there is, at most, one paragraph on page 3 of Plaintiffs' More Detailed Submission which purports to state R.W.'s disabilities and the impact of them in a school environment.  Even this articulated "issue," on its face, does not meet the IDEA complaint specificity requirements.  One example from that paragraph shows the inadequacy of the complaint.  On page 3 of the More Detailed Submission, Plaintiffs allege:

> R.W. has struggled with handwriting and near and far
> point copying and has sensory integration disabilities
> negatively impacting his functioning in the school
> setting, his learning and his emotional and social abilities
> for years and years.

More Detailed Submission at 3.

Absent from this paragraph and the More Detailed Submission as a whole is any factual detail such as: what is the handwriting and point copying issue?  How does it impact his "school experience"?  What are the indicia, in school, of the alleged sensory integration disabilities?  What manifestation is there of any impact on his "emotional and social activities"?  How has the school failed to address

these concerns?  Plaintiffs elect simply to provide a long laundry list of disabilities, which the Court calculates to be at least sixteen (16).[14]  Absent from the More Detail Submission, as the above example shows, is any even cursory factual description of how these alleged disabilities are expressed in the school context.

While the complaint appears long, viewed as a whole it only generally alleges that SCCSD denied R.W. FAPE for over six years.  Without names, dates, specific events, or any other factual basis, neither SCCSD nor the ALJ can be expected to address properly the merits of Plaintiffs' claims.

Plaintiffs' proposed resolutions are equally general and scant.  They state:

> 1) being found to have denied R.W. and his parent their substantive and/or procedural rights under any or all of the laws stated in paragraph one of this complaint notice, including but not limited to a denial of FAPE in the LRE [Least Restrictive Environment] and appropriate environment as well as failure to identify and evaluate . . . 4) providing R.W. with all necessary education, related services, and assistive technology . . . 7) providing R.W. with intensive educational programming and related services to make up for the significant

---

[14]  "The school district has failed to evaluate and identify R.W.'s speech and language disabilities, visual motor and processing disabilities, speech disabilities, spelling, auditory processing, social skills deficits, pragmatic language and judgment issues, math learning disabilities, emotional and behavioral disabilities, Asperger's and/or PDD issues, fine motor and sensory integration and processing disabilities, reading deficits, and written expression disabilities."  More Detailed Submission at 2.

-19-

educational deprivation, including the provision of research based
upon programming and services.

More Detailed Submission at 8.  These proposals, which are identical to the
proposals listed by Plaintiffs in their initial complaint, do not give Defendant any
opportunity to identify the specific problems and issues it must address or rectify.
Plaintiffs do not connect any proposed resolutions to any of the alleged problems,
facts, or disabilities.

It is undisputed that some effort has been made to address Plaintiffs'
concerns.  Indeed, an Individualized Education Program ("IEP") for R.W. exists
and has been modified and adjusted over the years, with both school district and
parent input.  Plaintiffs fail to point to even one aspect of the IEP they find
unsatisfactory.  Plaintiffs repeatedly allege that "the SCCSD never evaluated
R.W." and proceed to list R.W.'s many disabilities.  Defendant, however, has
submitted documents indicating that it has agreed to all the evaluations requested
by Plaintiffs.  It appears that when specific issues and a fact context is provided,
the SCCSD at least undertakes to try to respond to Plaintiff's concerns.

Plaintiffs assert their belief that the More Detailed Submission "more than
complied with the notice requirements of the IDEA" and express a broad criticism
of the IDEA pleading requirements by stating that "[b]ad faith allegations of

insufficiency have been a systemic problem ever since the consideration of the

IDEA 2004 sufficiency requirement." Plaintiffs' only support for their opinion

about interpretation of IDEA nationwide is an order of settlement from a court in

Ohio. That order, which does not apply here, does not in fact support the criticism

Plaintiffs express. The order states that the due process complaints in that case

should be construed in light of Schaeffer and Escambia County Bd. of Educ. v.

Benton, 406 F. Supp. 2d 1248, 1259-60 (S.D. Ala. 2005), cases which both

involved interpretations of the IDEA before the 2004 amendments.[15] The Court

further observes that a single order from Ohio, even if it said what Plaintiffs claim

– which it does not – hardly evidences "systemic problems" with the IDEA

pleading requirements. Plaintiffs' complaint simply falls well-short of meeting the

requirements of Section 1415(b)(7)(A)(ii), and is required to be dismissed without

prejudice to Plaintiff filing a complaint that meets the requirements of the act.

　　B.　　Count IV: ADA and Section 504 Claims

　　Plaintiffs also assert claims under the Americans with Disabilities Act

---

[15] These amendments placed greater emphasis on non-judicial resolution and required a party to file sufficient notice before receiving a right to a due process hearing.

("ADA"), 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C.

§ 794, alleging R.W. has been subjected to retaliation, discrimination, harassment,

and "educational deprivation." SCCSD contends these claims should be dismissed

for failure to exhaust the administrative remedies of the IDEA.

Section 1415(l) directly addresses this issue:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, *except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.*

20 U.S.C. § 1415(l) (emphasis added). The Eleventh Circuit requires that this

exhaustion requirement be met. In Babicz v. Sch. Bd. of Broward County, 135

F.3d 1420, 1422 (11th Cir. 1998), the Eleventh Circuit agreed with both the

Second and Seventh Circuits that "claims asserted under Section 504 and/or the

ADA are subject to Section 1415(f)'s requirement that litigants exhaust the IDEA's

administrative procedures to obtain relief that is available under the IDEA before

bringing suit under Section 504 and/or the ADA." (internal citations omitted). See

also J.P. v. Cherokee County Bd. of Educ., 218 Fed. App'x 911, 913 n. 3 (11th Cir.

-22-

2007).  "Thus, whether claims asserting the rights of disabled children are brought pursuant to the IDEA, the ADA, Section 504, or the Constitution, they must first be exhausted in state administrative proceedings."  M.T.V. v. Dekalb County Sch. Dist., 446 F.3d 1153, 1158 (11th Cir. 2006).[16]  The Eleventh Circuit has explained that where the alleged injuries "*primarily* relate to the provision of his FAPE, and thus constitute educational injuries (as opposed to physical injuries),"–as is the case here–"Plaintiffs were required to exhaust administrative remedies before filing this court action."  J.P., 218 Fed. App'x at 914 (emphasis in original). "Because exhaustion is a prerequisite to the civil action contemplated by § 1415(l), a parent's failure to exhaust administrative remedies by requesting *and participating* in a due-process hearing will result in dismissal of the civil action." Id. at 913 (emphasis added).

The Eleventh Circuit has explained the principles guiding the administrative exhaustion requirement: "1) to permit the exercise of agency discretion and

---

[16] In M.T.V., the parents refused to adhere to the ALJ's order requiring M.T.V. to submit to a reevaluation by the school district in order to continue receiving "other health impaired" services under the IDEA.  The Eleventh Circuit affirmed dismissal of the retaliation claims brought under the ADA and Section 504 and affirmed the ALJ's finding that a school district had a right to reevaluate a student by its own expert.  See M.T.V., 446 F.3d at 1158.

expertise on issues requiring these characteristics; 2) to allow the full development of technical issues and a factual record prior to court review; 3) to prevent deliberate disregard and circumvention of agency procedures established by Congress; and 4) to avoid unnecessary judicial decisions by giving the agency the first opportunity to correct any error." N.B. by D.G. v. Alachua County Sch. Bd., 84 F.3d 1376, 1378-79 (11th Cir. 1996), citing Ass'n for Retarded Citizens of Ala. v. Teague, 830 F.2d 158, 160 (11th Cir. 1987).  All of these reasons are implicated in this case.  ALJs have the expertise on the educational issues governed by the IDEA.  Full development of either technical or factual issues has not taken place, and a review of Plaintiffs' complaint and amended submission indicate a deliberate disregard of the IDEA notice requirements and the ALJ's attempt to clarify the issues.  Finally, without a proper notice and due process hearing, neither the school district nor the ALJ has an opportunity to correct or address the  problems alleged by Plaintiffs..

Plaintiffs conclusorily allege they "did in fact exhaust whatever, if any, administrative remedies they had available.  In fact, they even appealed to this Court the denial of those administrative remedies."  Plaintiffs' Brief at p. 9.  This simply is not the case.  Plaintiffs do not provide any support for this assertion, and

it is undisputed that a due process hearing adjudicating the merits of Plaintiffs' claims was not conducted.  Plaintiffs have not exhausted their administrative remedies, nor have they demonstrated that their non-compliance should be excused.[17]

Plaintiffs thus may re-file a properly detailed complaint before the OSAH, in compliance with both the requirements under Section 1415(b)(7)(A)(ii) and the ALJ's order.  Plaintiffs are cautioned to note specific dates, times, and individuals involved in each problem, including the exact reasons why specific aspects of R.W.'s IEP or evaluation methods are unsatisfactory.  Plaintiffs should, in their complaint before OSAH, associate specific proposed resolutions for each alleged problem or issue, explaining how each resolution would address each alleged problem.

---

[17]  The Eleventh Circuit has held there are only two situations in which exhaustion is not required: "where resort to administrative remedies would be 1) futile or 2) inadequate."  M.T.V., 446 F.3d at 1159.  "The burden of demonstrating futility is on the party seeking exemption from the exhaustion requirement."  Id. Plaintiffs have not argued that resort to administrative remedies would be futile or inadequate, and this Court finds neither excuse applicable in this case.

IV.    CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Social Circle City School

District's Motion for Judgment on the Record and Motion to Dismiss [26] are

**GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs R.W. and M.W.'s Motion for

Partial Judgment on the Record [28] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Complaint is **DISMISSED**

**WITHOUT PREJUDICE.**

**SO ORDERED** this 17th day of October, 2008.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE